IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:24-CV-1002-MOC-SCR

| | |
|---|---|
| SALLAMONDRA ROBINSON, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHANQUELLA ROBINSON, DECEASED<br><br>Plaintiff,<br><br>v.<br><br>E'MANI GREEN, ALYSSE HYATT, MALIK DYER, WENTER DONOVAN, KHALIL COOKE, and NAZEER TYREE WIGGINS<br><br>Defendants. | **E'MANI GREEN'S BRIEF IN SUPPORT OF HER MOTION TO DISMISS FOR INSUFFICIENT SERVICE OF PROCESS AND FORUM NON CONVENIENS** |

Defendant E'mani Green, by and through undersigned counsel and pursuant to LCvR 7.1(c), files this Memorandum in Support of her motion to the Court to dismiss this action pursuant to Rules 12(b)(1), 12(b)(5), and 41(b) of the Federal Rules of Civil Procedure for Insufficient Service of Process and *forum non conveniens*.

## STATEMENT OF THE CASE

Plaintiffs filed the Complaint that initiated this civil action in the Superior Court of Mecklenburg County on October 28, 2024. (DE 6). Defendants Federal Bureau of Investigation and United States Department of State removed the action to this Court on November 14, 2024. E'mani Green now moves to have the claims against her dismissed pursuant to Rules 12(b)(1), 12(b)(5), and 41(b) of the Federal Rules of Civil Procedure for Insufficient Service of Process and *forum non conveniens*.

## STATEMENT OF THE FACTS

Plaintiffs' Amended Complaint, filed on November 22, 2024, alleges various legal theories against E'mani Green and others arising out of alleged incidents that occurred during a trip to Cabo San Lucas, Mexico on or about October 29, 2022. Amended Complaint, ECF No. 4.

Defendant Green moved to Hartford, Connecticut in December 2022. See Declaration of E'Mani Green, attached hereto as **Exhibit A.** Defendant Green has not lived at 3023 Sherill Avenue, Jamestown, NC 27282 since April 2021. See Declaration of Tammy Gordon, attached hereto as **Exhibit B**; see also **Exhibit A.**

A summons for Defendant Green was issued on December 30, 2024, listing a North Carolina Address of 3023 Sherill Avenue, Jamestown, NC 27282. Summons, ECF No. 23. A second summons for Defendant Green, listing a Connecticut address of 221 Grandview Terrace, Hartford, CT 06114, was issued on January 30, 2025. Summons, ECF. No. 31.

Plaintiff retained Raymond Ranno of Ranno Investigation Services on April 1, 2025, for the purpose of surveilling and making service on Defendant Green. Ranno Investigation Report, ECF. No. 61-1. On May 7, 2025, Plaintiffs purportedly made substitute service on Mrs. Tammy Gordon, at 3023 Sherill Avenue, Jamestown, NC 27282. Affidavit of Service, ECF No. 61-2.

However, this Affidavit of Service was not filed with the Court or served on Ms. Green prior to Plaintiffs' Opposition to Defendant Green's Motion to Dismiss. Opposition, ECF No. 61.

Defendant Green filed her pro-se Answer to Plaintiffs' Amended Complaint on June 18, 2025, asserting, among other things, that Plaintiffs' service of process was improper, as she did not reside at the address where she was served. Emani Green's Answer, ECF NO. 55.

## ISSUES PRESENTED

By her motion, Defendant Green presents the following issues to the Court: Whether the Court should dismiss the claims against Mrs. Green for Insufficient Service of Process and Improper Venue pursuant to the Doctrine of *forum non conveniens*.

## ARGUMENT

I. **Defendant Green's Motion to Dismiss and Supporting Brief is Proper**

First, Plaintiffs assert, in their Opposition, that Defendant Green's Motion was improper for failing to include a brief in support, in accordance with Local Rule 7.1. This argument is misplaced, as Motions to Dismiss, which are Motions contained in Initial Responsive Pleadings, are specifically addressed in Local Rule 7.1(c)(1), which states, "Motions to dismiss in answers to complaints, replies to counterclaims or answers to crossclaims are deemed to be made merely to preserve the issue and will not be addressed by the Court. A party seeking a decision on any preserved motion must file a separate motion and supporting brief."

Here, while Defendant Green's Motion to Dismiss was originally asserted in her Answer and Amended Answer, only now is Defendant Green filing the separate Motion and supporting brief, as contemplated by Local Rule 7.1(c)(1). As such Defendant Green's Motion to Dismiss is proper and should be considered by the Court.

II. **Plaintiff Has Failed to Make Proper Service of Process on Defendant Green**

Federal Rule of Civil Procedure 4(c)(1) states, "A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." Fed. R. Civ. P. 4; *see also Pitts v. O'Geary*, 914 F. Supp. 2d 729 (E.D.N.C. 2012) (dismissing the notation that actual knowledge of a legal action is sufficient to prove proper

service, referencing "*Friedman v. Estate of Presser*, 929 F.2d 1151, 1155 (6th Cir.1991). Rule 4(m) goes on to state, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Service upon an individual, can be effectuated by "delivering a copy of the summons and of the complaint to the individual personally" or "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides thereto. Fed. R. Civ. P. 4(e)(2)(A)-(B). "Absent waiver of service of process or consent, the failure to obtain proper service of process deprives the court of personal jurisdiction over a defendant." *Pitts,* 914 F. Supp. at 733. "Before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant...Due process requires proper service of process in order to obtain in personam jurisdiction…In short, ***the requirement of proper service of process is not some mindless technicality***." *Friedman v. Est. of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991) (emphasis added) (citations omitted). Without personal jurisdiction "a court lacks all jurisdiction to adjudicate that party's right, whether or not the court has valid subject matter jurisdiction." *See Id.*

    A.    <u>Plaintiffs' Service of Mrs. Green Was Improper</u>

Plaintiffs' allege in their "Opposition to Defendant Emani Green's Motion to Dismiss" that substitute service was made on Defendant Emani Green by serving Mrs. Tammy Gordon, a resident of 3023 Sherill Avenue, Jamestown, NC 27282 on May 7, 2025. Plaintiffs allege that Ms. Tammy Gordon was a co-resident of Defendant Green and that Mrs. Gordon "confirmed that E'mani Green was a resident of the home." This statement is objectively false.

Federal courts have developed a substantial body of case law interpreting the terms dwelling or usual place of abode under Federal Rule of Civil Procedure 4(e)(2)(B) and its predecessors. The Supreme Court's foundational decision in *Earle v. McVeigh*, 91 U.S. 503, 23 L. Ed. 398 (1875) established that usual place of abode requires current residence where the defendant is living or has his home, not merely a former or last residence. The Court explicitly rejected the notion that usual place of abode means merely the last residence, stating that "[b]y the expression, 'the usual place of abode,' the law does not mean the last place of abode; for a party may change his place of abode every month in the year." *Id*. at 91 U.S. 508, 23 L. Ed. 398.

Federal courts have consistently held that while there are no hard and fast rules for determining what constitutes a dwelling or usual place of abode there must be objective evidence of current residential connection as courts are not "concerned with defendant's citizenship or domicile but only with his residence." *James v. Russell F. Davis, Inc.,* 163 F. Supp. 253, 256 (N.D. Ind. 1958) (holding that the home of defendant's father did not qualify as dwelling or usual place of abode when defendant was married two months prior to service and had set up residence with his wife); *See also*, *Hysell v. Murray*, 28 F.R.D. 584 (S.D. Iowa 1961) (holding that the home of defendant's father did not qualify as dwelling or usual place of abode when Defendant was in active military service and living elsewhere with his wife); *Cox v. Quigley*, 141 F.R.D. 222 (D. Me. 1992) (holding that attempted service upon Defendant, a recent college graduate who was aboard a military ship, at his parents' home was not proper); *Berner v. Farny,* 11 F.R.D. 506 (D.N.J. 1951) (holding that even though Defendant jointly owned the property with his brother and that it appeared he was "insulting himself from suit" it is clear that the property of the attempted service was not his "dwelling house or usual place of abode" as Defendant's residence was in another state. *Id*. at 508); *Karlsson v. Rabinowitz*, 318 F.2d 666 (4th Cir. 1963) (holding

5
Case 3:24-cv-01002-MOC-SCR    Document 63-1    Filed 08/18/25    Page 5 of 18

that service was proper when Defendant's wife was served at Defendant's prior residence when Defendant moved out of state to start a new job and was staying at a hotel while his wife remained a few extra weeks to complete the sale of the residence).

Here, Defendant Green has not resided at 3023 Sherill Avenue since April 2021, over four years before substitute service was purportedly made on her at that location. Exhibit A at ¶ 2; Exhibit B at ¶ 4. Defendant Green established another residence in North Carolina after 3023 Sherill Avenue before moving to Connecticut. Exhibit A at ¶ 2; Exhibit B at ¶ 4. Defendant Green then moved out of the state of North Carolina to Connecticut in December 2022. Exhibit A at ¶ 3. Defendant Green changed her bank accounts and other personal affairs her to Connecticut residence. Exhibit A at ¶¶ 4-5. Since December 2022, Defendant Green has resided solely in Connecticut, established residency in Connecticut, and maintained employment in Connecticut. Exhibit A at ¶ 2-5. At no time following April 2021 did Defendant Green reside at 3023 Sherill Avenue. Exhibit A at ¶ 2. Plaintiffs were aware of this fact, as they admit, in their Opposition to Defendant Green's Motion, that "private process server Raymond Ranno of Ranno Investigative Services observed Defendant Green's 2018 Honda Accord parked in the driveway" of the Connecticut address. ECF No. 61.

Plaintiffs' in their Opposition, ECF No. 61, claim that Mrs. Green informed the process server that E'mani Green was a resident of 3023 Sherill Avenue. However, this statement is objectively false, based on the statements of both Defendant Green and Mrs. Gordon herself. Mrs. Gordon told the process server that Defendant Green was not a resident of 3023 Sherill Avenue and in fact she had not been a resident since April 2021. Exhibit B at ¶¶ 4, 7-8; Exhibit A at ¶ 2.

Therefore, because Defendant Green was not living at 3023 Sherill Avenue, Jamestown, NC at the time service was purportedly made, this was not Defendant Green's "dwelling or usual

6
Case 3:24-cv-01002-MOC-SCR    Document 63-1    Filed 08/18/25    Page 6 of 18

place of abode" pursuant to Fed. R. Civ. P. 4(e)(2)(A)-(B). As such, Plaintiffs purported service on Defendant Green via personal service on Tammy Gordon at 3023 Sherill Avenue was not proper, and the matter should be dismissed.

B. <u>Plaintiffs' Service on Defendant Green Was Untimely</u>

Even if the Court should find that service on Defendant Green was properly made via Tammy Gordon, Plaintiffs' service on Defendant Green was also untimely. Here, Plaintiffs' Amended Complaint was filed on November 22, 2024. Pursuant to Rule 4(m), Plaintiffs had ninety (90) days from this date, or until February 20, 2025, to make service on Defendant Green. However, Plaintiffs blatantly ignored this deadline.

First, Plaintiffs waited until December 30, 2024, to obtain their first Summons for Defendant Green, which listed a North Carolina address of 3023 Sherill Avenue, Jamestown, NC 27872. Then, 30 days later, on January 30, 2025, Plaintiffs obtained a second summons for Defendant Green at a Connecticut address of 221 Grandview Terrace, Hartford, Connecticut 06114. Despite obtaining these two summonses, Plaintiffs made no additional efforts to serve Defendant Green with process until April 1, 2025, when Plaintiff hired Ranno Investigation Services to surveil and make service on Defendant Green. This was already 130 days after Plaintiffs' filed their First Amended Complaint, well outside the statutory deadline established by Rule 4(m). It wasn't until May 7, 2025, that Plaintiff asserts substitute service was effectuated on Mrs. Tammy Gordon at 3023 Sherill Avenue, Jamestown, NC 27872.[1] This is 166 days after Plaintiffs' Amended Complaint was filed, well past the statutory deadline. As a result, Plaintiffs' service on Defendant Green was untimely and "must" be dismissed pursuant to Rule 4(m) of the

---

[1] Service on Mrs. Tammy Gordon was also improper, which we have addressed in more detail above.

Federal Rules of Civil Procedure.

Plaintiffs have argued in their Opposition that good cause exists for extending the time to serve Defendant Green because Defendant Green undertook "evasive tactics" to evade accountability and "dodge service." However, this argument is improper and should not be considered by the Court. In order to request an extension of time to make service, the Plaintiff should have made such a request by motion pursuant to Federal Rule of Civil Procedure 4(m). Here, no such motion has ever been made prior to Plaintiffs' Objection. Further, it is the Plaintiffs' burden to show "good cause" for the failure. Here, no such good cause can be shown.

It is clear from Plaintiffs' own filings that they were aware of Defendant Green's residence in Connecticut as early as January 30, 2025 when the second summons was issued. However, despite this knowledge, Plaintiffs did not even retain private process server until April 1, 2025, well after the ninety (90) day service deadline had expired, and without ever moving the Court for an extension of that deadline. Further, upon information and belief, Plaintiffs' haven't made service on Defendant Green at her Connecticut address as of the date of this filing, despite Defendant Green's pro-se answer confirming that this was her address.

"It is Plaintiffs' burden to follow the Federal Rules of Civil Procedure when prosecuting an action. Early among those rules is the well-known requirement that a plaintiff serve a copy of the summons and complaint within ninety days of filing the complaint." *Beasley v. Bojangles' Restaurants, Inc.*, No. 1:17CV255, 2018 WL 4518693, at *2 (M.D.N.C. Sept. 20, 2018) (distinguishing *Karlsson* where the Plaintiff made attempts at service prior to the expiration of the 90 days as required and finding no "explanation for their dilatory service, much less an argument for good cause" *Id*. at *3).

"[T]he plaintiff must have taken some affirmative action to effectuate service of process upon the defendant or have been prohibited, through no fault of his own, from taking such an affirmative action. *Vincent v. Reynolds Mem'l Hosp., Inc.,* 141 F.R.D. 436, 437 (N.D.W. Va. 1992). "Inadvertence, neglect, misunderstanding, ignorance of the rule or its burden, or half-hearted attempts at service have generally been waived as insufficient to show good cause. *Id*.

The Court in *Hammad v. Tate Access Floors, Inc.* expressed "it is well-established that in order to show good cause, a plaintiff must demonstrate that he made reasonable, diligent efforts to effect service on the defendant." *Hammad v. Tate Access Floors, Inc.,* 31 F. Supp. 2d 524, 528 (D. Md. 1999) (citations omitted) (dismissing the action as the Plaintiff made "made no efforts to effect service on [Defendant] before the expiration of the prescribed time period." *Id*. at 528).

Plaintiffs' alleged "best efforts" and "good cause" as argued in their opposition, started well after the mandatory 90 day service deadline had already expired. Further, Plaintiffs were aware of Defendant Green's Connecticut residence as evidenced by the second summons dated January 30, 2025. Summons, ECF. No. 31. However, for reasons unknown, Plaintiff waited until April 1, 2025, to retain a process server in Connecticut, and never made any attempt to request additional time to make service from this Court. Plaintiffs' delay in even beginning to attempt service, well after the 90 days, is downright neglectful and doesn't rise even close to the effort necessary to establish "good cause."

Therefore, for the reasons stated above, Plaintiffs' claims against Defendant Green should be dismissed for insufficient service of process pursuant to Rule 12(b)(5).

### III. Plaintiffs' Complaint Should Be Dismiss Pursuant to Forum Non Conveniens

In addition to the service defenses raised above, the Court should also dismiss Plaintiffs' claims against Defendant Green as the Western District of North Carolina is not the appropriate venue for the case to be heard.

The United States Supreme Court recently clarified that a federal district court should dismiss claims in an action "on the grounds that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 422 (2007). In *Sinochem*, Plaintiff filed an action in the Eastern District of Pennsylvania for a loss that arose in China. See id. However, the Defendant moved to dismiss pursuant to multiple theories, including *forum non conveniens*. Upon review, the Supreme Court ruled that *forum non conveniens* is a non-meritorious ground for discretionary dismissal allowing a District Court to dismiss an action at the outset even before evaluating personal and subject matter jurisdiction if a court abroad is the more appropriate and convenient forum for adjudicating the controversy. *Id*. at 423.

According to the Court in *Sinochem*, a "federal court has discretion to dismiss a case on the ground of forum non conveniens when an alternative forum has jurisdiction to hear the case, and trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience." *Id*. at 429 (citations omitted). In coming to this decision, the Court held that "dismissal for *forum non conveniens* reflects a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality." *Id*. (internal citations omitted).

In *Gulf Oil Corp.* v. *Gilbert*, Justice Jackson described some of the factors relevant to the *forum non conveniens* determination:

> An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant. Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility *[sic]* of a judgment if one is obtained .... Factors of public interest also have [a] place in applying the doctrine. Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S. Ct. 839, 843, 91 L. Ed. 1055 (1947).

Here, when viewing the factors outlined in Gulf Oil, it is clear that the court system of Mexico, and not North Carolina, is the appropriate location for this matter to be heard. Plaintiffs' Amended Complaint involves events, interactions with hotel workers, witnesses, and healthcare providers who are all located in Mexico.

Further, the material witnesses necessary to develop these facts and defenses central to the Plaintiffs cause of action are, upon information and belief, located in Mexico. Upon Plaintiffs' own allegations, those witnesses include the following:

1. Karolina Beatriz Ornelas Gutierrez, who is alleged to be the healthcare provider who provided medical treatment to Shanquella Robinson, as per Exhibit B of Plaintiffs' Amended Complaint (DE 4, p.19);

2. Suni Jehseel Popoca Millan, who is alleged to be the police investigator who interviewed Karolina Beatriz Ornelas Gutierrez as per Exhibit B of Plaintiffs' Amended Complaint (DE 4, p.20) and who also authored the Mexican police investigative report as per Exhibit C of Plaintiff's Amended Complaint (DE 4, p.32);

3. Dr. Alvaro Atilano, who is alleged to have been consulted during life-saving measures that were administered to Shanquella Robinson as per Exhibit B of Plaintiffs' Amended Complaint (DE 4, p.24);

4. Emergency medical staff with the Red Cross ambulance (common sense indicates at least two witnesses) who were consulted during life-saving measures that were administered to Shanquella Robinson as per Exhibit B of Plaintiffs' Amended Complaint (DE 4, p.27)("...until the Red Cross ambulance arrived...");

5. Emergency medical staff from three ambulances (common sense indicates at least two witnesses per ambulance for a total of at least six witnesses) who were consulted during life-saving measures that were administered to Shanquella Robinson as per Exhibit B of Plaintiffs' Amended Complaint (DE 4, p.27)("... the same thing that the other three ambulances that came to the scene told me.");

6. The municipal police officers (at least two and likely more) who allegedly conducted the investigation into Shanquella Robinson's death as per Exhibit B of Plaintiffs' Amended Complaint (DE 4, p.28)("... the municipal police officers had already arrived at the scene ... they asked me about the patient's condition.... I waited for them to finish interviewing one of the Red Cross paramedics....One of the officers took my statement...");

7. "Giovanni the administrator" as alleged per Exhibit B of Plaintiffs' Amended Complaint (DE 4, p.28)("...Giovanni the administrator arrived and the officers told me that I could not leave yet.");

8. Moreover, Exhibit B to Plaintiffs' Amended Complaint begins with page 34 in the top right corner. Thus, there are thirty-three pages of the Mexican police department's report that are unaccounted for, and common sense indicates that additional witnesses are identified in those thirty-three missing pages.

9. Dr. Rene Adalberto Galvan Oseguera, who is alleged to be the forensic examiner who performed the autopsy on Shanquella Robinson, as per Exhibit C of Plaintiffs' Amended Complaint (DE 4, p.36);

10. Christian Armendariz, who is alleged to be the general manager of the Hotel Aeropuerto Los Cabos, which is where the individual defendants were staying and where Shanquella Robinson passed away as per Exhibit C of Plaintiffs' Amended Complaint (DE 4, p.31);

11. Police Chief Juan Pablo Sepulveda, who is alleged to be one of the lead police officers who was in charge of the Mexican police department's investigation into Shanquella Robinson's death as per Exhibit C of Plaintiffs' Amended Complaint (DE 4, p.31);

12. Lieutenant Commander Aaron Bautista Alvarez, who is alleged to be one of the lead police officers who was in charge of the Mexican police department's investigation into Shanquella Robinson's death as per Exhibit C of Plaintiffs' Amended Complaint (DE 4, p.31);

13. General Director of the Control Center, Communication and Computation Command of the Baja California Sur State Bruno Khmer Cantarell Maytorena, who is alleged to have been involved in the investigation into Shanquella Robinson's death as per Exhibit C of Plaintiffs' Amended Complaint (DE 4, p.31);

14. Rodolfo Palomera Jimenez, who is alleged to be a witness and was interviewed as part of the Mexican police department's investigation into Shanquella Robinson's death as per Exhibit C of Plaintiffs' Amended Complaint (DE 4, p.31);

15. Eduardo Trinidad Juarez, who is alleged to be the "Criminal Expert" who assisted in the investigation into Shanquella Robinson's death, as per Exhibit C of Plaintiffs' Amended Complaint (DE 4, p.38);

16. Karen Andrea Castro, who is alleged to be the "Evidence Room Assistant" who assisted in the investigation into Shanquella Robinson's death, as per Exhibit C of Plaintiffs' Amended Complaint (DE 4, p.38);

17. Moreover, Exhibit C to Plaintiffs' Amended Complaint, which allegedly contains a portion of the Mexican government's official report of its investigation into Shanquella Robinson's death, begins with unnumbered pages but then lists page 88 in the top right corner (DE 4, p.37). Thus, there are dozens of pages of the Mexican police department's report that are unaccounted for, and common sense indicates that additional witnesses are identified in those missing pages.

Consequently, based on this tally of witnesses who are identified in Plaintiffs' Amended Complaint, ***there are at least two dozen witnesses who reside in Mexico***. These witnesses have important information regarding Shanquella Robinson's death as well as the Defendants' actions prior to and after Ms. Robinson's death. It is self-evident that a federal court in the Western District

14
Case 3:24-cv-01002-MOC-SCR     Document 63-1     Filed 08/18/25     Page 14 of 18

of North Carolina will have little-to-no success in compelling the testimony of these witnesses, of which there are many and which comprise the overwhelming majority of known witnesses.

Further, the parties were all in Mexico, and the applicable claims against Defendant Green directly involve Mexican tort law and theories of civil negligence, contributory or comparative negligence, bystander duties, and medical treatment, among others. All applicable claims should be determined by the laws of Mexico.

As for witnesses who do not reside in Mexico, the material witnesses are the parties themselves. The parties are available for questioning regardless of where the lawsuit is pending, but the same is not true for the Mexico-based witnesses.

In the Western District of North Carolina, Defendant Green has no ability to compel the testimony of the applicable witnesses to present a fair defense for the Court and jury to determine the issues on the merits. Moreover, a Court in Mexico is in a significantly better position to evaluate and apply the laws of that jurisdiction to the alleged facts in this dispute as well as to compel the testimony of witnesses. By any measure, this case should be decided by a civil Court in Mexico.

## CONCLUSION

For the reasons stated herein, the undersigned respectfully requests the Court grant her motion to Dismiss pursuant to Rules 12(b)(1), 12(b)(5), and 41(b) of the Federal Rules of Civil Procedure for Insufficient Service of Process or in the alternative enter an order dismissing Plaintiff's Amended Complaint for Improper Venue pursuant to the Doctrine of *forum non conveniens* so that this matter may be decided by the Mexican court system.

This the 18th day of August, 2025.

                                                **HALL BOOTH SMITH, P.C.**

                                                /s/ JT Mlinarcik
                                                BRIAN MANIKOWSKI
                                                NC Bar No.: 57649
                                                JT MLINARCIK
                                                NC Bar No.: 35455
                                                ***Attorneys for E'mani Green***

5420 Wade Park Boulevard
Suite 130
Raleigh, NC 27607
Phone: (984) 247-8880
bmanikowski@hallboothsmith.com
jtmlinarcik@hallboothsmith.com

## CERTIFICATE OF COMPLIANCE WITH COURT ORDER AS TO USE OF ARTIFICIAL INTELLIGENCE

I hereby certify that the foregoing document complies with the Order issued by the Court on June 18, 2024, as to the use of artificial intelligence (AI) in briefs or memorandums as follows:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexus, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 18th day of August, 2025.

**HALL BOOTH SMITH, P.C.**

/s/ JT Mlinarcik
BRIAN MANIKOWSKI
NC Bar No.: 57649
JT MLINARCIK
NC Bar No.: 35455
*Attorneys for E'mani Green*

5420 Wade Park Boulevard
Suite 130
Raleigh, NC 27607
Phone: (984) 247-8880
bmanikowski@hallboothsmith.com
jtmlinarcik@hallboothsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **BRIEF IN SUPPORT OF DEFENDANT GREEN'S MOTION TO DISMISS** was filed electronically with the Clerk of Court using the CM/ECF system and was served electronically upon the parties below:

Gabrielle Higgins
Frontline Law FL
614 S. Federal Hwy
Fort Lauderdale, FL  33301
gabrielle@frontlinefirm.com
*Attorney for Plaintiff*

Saleisha N. Aveerhart
Wallis, Bowens, Averhart & Associates, PLLC
5500 McNeely Drive, Suite 101 & 102
Raleigh, NC  27612
saleisha@wbaalaw.com
*Attorneys for Plaintiff*

Sue-Ann Robinson
Robinson Caddy Law
PO Box 1218
Fort Lauderdale, FL  33312
sueann@bencrump.com
*Attorney for Plaintiff*

Andrew Harris Brown
Brown, Faucher, Peraldo & Benson, PLLC
822 N Elm Street, Suite 200
Greensboro, NC  27401
dbrown@bbflaw.com
*Attorney for Alysse Hyatt*

Brian M. Williams
Hedrick Gardner Kincheloe & Garofalo, LO
4131 Parklake Ave., Suite 300
Raleigh, NC  27612
bwilliams@hedrickgardner.com
*Attorney for Khalil Cooke*

Gary K. Sue
Burton Sue & Anderson, LLP
PO Box 20083
Greensboro, NC  27420
*Attorney for Wenter Donovan*

Malik Dyer
81 Burlington Street
Hartford, CT  06112
*Pro Se*

Nazeer Tyree Wiggins
5221 Londonderry Road
Charlotte, NC  28210
*Pro Se*

This the 18th day of August, 2025.

**HALL BOOTH SMITH, P.C.**

5420 Wade Park Boulevard
Suite 130
Raleigh, NC  27607
Phone:   (984) 247-8880
bmanikowski@hallboothsmith.com
jtmlinarcik@hallboothsmith.com

/s/ JT Mlinarcik
BRIAN MANIKOWSKI
NC Bar No.: 57649
JT MLINARCIK
NC Bar No.: 35455
***Attorneys for E'mani Green***